UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

CHRISTIAN ORTEGA

    Plaintiff,

vs.

VERSACE USA, INC.

    Defendant.

_____/

## COMPLAINT

COMES NOW the Plaintiff, CHRISTIAN ORTEGA (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, sues the Defendant, VERSACE USA, INC. (hereinafter referred to as "Defendant"), and alleges the following:

### PARTIES, JURISDICTION, AND VENUE

1. This is a civil action for a violation of the Family Medical Leave Act, 29 U.S.C.S. §§ 2601-2654.

2. Plaintiff is a male who resides in Miami, Florida. At all material times herein, Plaintiff had worked for Verace USA, Inc. for at least 1250 hours.

3. VERSACE USA, INC. is a New York Corporation. Defendant conducts substantial business in the State of Florida. Verace USA, Inc. has fifty (50) employees within a seventy-five (75) mile radius from where Plaintiff was employed.

4. This Court has jurisdiction over this matter pursuant to 28 USC § 1331 and 28 U.S.C. § 1367.

5. Venue lies within the Southern District of Florida, Miami-Dade County, pursuant to 28 USC §§ 1391 (b) and (c), because all actions relevant to Plaintiff's claims arose in this Judicial Circuit.

1

## FACTS

6.      Defendant hired Plaintiff in February 2020 as a supervisor. Plaintiff's pay was based upon a commission and an hourly wage.

7.      Defendant agreed to pay Plaintiff $17.00/hour plus a 3-5% commission depending on the store's performance.

8.      In March 2020, Plaintiff contracted Covid-19.

9.      Plaintiff returned to work around March 15, 2020 shortly after the business closed due to Covid-19. At that time, Plaintiff was paid $15.00/hr. though he was promised $17.00/hr.

10.     Plaintiff got into a car accident on August 10, 2020.

11.     As a result of the accident, Plaintiff was injured.

12.     Shortly thereafter, Plaintiff sought treatment for his back. In November 2020, Plaintiff informed his employer that he would take a break from his treatments in December 2020 so that he could support the store during the holiday season but that he would continue his treatments in January 2021.

13.     In December 2020, after working for Defendant for no less than 1250 hours since he started working for the company, Plaintiff notified Defendant in writing that he was going to continue treatment for his back as a result of the accident starting at the end of January 2021. Plaintiff requested Defendant for intermittent FMLA leave, that is, off Tuesdays, Thursday, and Saturday mornings in order to obtain treatment from his doctor due to injuries resulting from the accident. Plaintiff's doctor made the request in writing and delivered to the General Manager and Human Resources. Plaintiff even suggested that his doctor appointments be scheduled in the morning on those days so that he could potentially work in the afternoons on Tuesdays, Thursdays, and Saturdays, so that he could also close the store to support the business.

14. In January 2021, Plaintiff continued his treatments with his doctor for his back injuries. After said request for days off to see a doctor, Defendant prohibited and interfered with Plaintiff from obtaining intermittent FMLA leave, and/or retaliated against him for taking such leave by writing him up for excessive tardiness. This write up was issued by Defendant on February 5, 2021.

15. Subsequently, in February and March 2021, Plaintiff continued to attend doctor's appointments on each Tuesdays, Thursdays, and Saturdays to seek treatment for his ailing back. Plaintiff attended doctor's appointments on 2/6, 2/13, 2/15, 2/20, 2/27, 2/28, and 3/5. This caused Plaintiff to be late to work.

16. In March 2021, Defendant fired the store manager, Blaine Kavalsky.

17. As a result, Defendant placed Plaintiff in charge of the store and/or as a the "go to" person until a new manager was hired, thereby adding to his duties and responsibilities in the store.

18. On March 26, 2021, Defendant asked Plaintiff the reasons he was late for work on 2/6, 2/13, 2/15, 2/20, 2/27, 2/28, and 3/5 though they were acutely aware that Plaintiff was late because he was seeking treatment from a doctor for his back during the mornings.

19. In March and April 2021, under Plaintiff's supervision, the store met its sales goals.

20. On Sunday, April 25, 2021, Plaintiff was scheduled to work. However, on that date, Plaintiff was hospitalized due to an infection in his blood. Plaintiff notified his employer that he needed several days off due to his hospitalization.

21. Plaintiff was incapacitated for two (2) days, but he asked for additional days off because he was incapacitated. The temporary manager of the store demanded Plaintiff to come back to work despite the fact that he needed additional days off to recover from his hospitalization.

22. During Plaintiff's hospital stay, the doctor performed a physical on Plaintiff. Upon completing the physical, Plaintiff was informed that he had hernia, and that he required surgery to repair it.

23. Soon after Plaintiff was released from the hospital, he requested time off May 14, 2021 through May 18, 2021 from his employer to have surgery to repair his hernia. Plaintiff discussed this request with the temporary manager of the store.

24. A few days after Plaintiff was released from the hospital, he went to a doctor to examine the hernia. The doctor recommended an immediate surgery to repair the hernia.

25. On or about May 12, 2021, Defendant fired Plaintiff on the grounds of excessive absences from work.

26. All conditions precedent to this lawsuit have been satisfied.

## FMLA RETALIATION

27. Plaintiff hereby incorporates paragraphs one (1) through twenty-six (26) as if fully set herein.

28. Plaintiff was qualified for the position as supervisor given he had many years of experience working in retail stores.

29. Plaintiff engaged in statutory protected activity in that he sought intermittent FMLA leave in order to obtain treatment for injuries sustained in a car accident; he requested time off due to a hospital stay; and he requested time off to have surgery for a hernia.

30. Plaintiff had two (2) days off while he was in the hospital.

31. After Plaintiff was released from the hospital, he requested additional leave for May 14, 2021 through May 18, 2021.

32.     Defendant terminated Plaintiff from his position because he requested and utilized FMLA leave to attend doctor's appointments, a hospital stay, and requested time off to have surgery for his hernia.

33.     Plaintiff suffered damages as a result of the retaliation. Plaintiff requested FMLA leave in March and April 25, 2021.  Defendant terminated Plaintiff on May 12, 2021. Thus, there is a causal connection between Plaintiff's request for FMLA leave, and his termination.

## FMLA INTERFERENCE

34.     Plaintiff hereby incorporates paragraphs one (1) through twenty-six (26) as if fully set herein.

35.     Plaintiff was entitled to intermittent FMLA leave.  Plaintiff sought FMLA leave when he unexpectantly hospitalized due to an infection in his blood and had to have surgery to repair a hernia.  These were serious health condition that made him unable to perform the functions of his position.

36.     Defendant was acutely aware of Plaintiff's need for intermittent FMLA leave due to his hospitalization.  In fact, Plaintiff contacted Defendant advising that he was hospitalized unexpectedly, and needed several days off to recover.

37.     Due to his hospitalization, Plaintiff was entitled to a benefit under the FMLA but his employer denied him the benefit.  Particularly, Plaintiff required more than two (2) days off due to his infection.

38.     Defendant denied him necessary FMLA leave.  Defendant instead demanded Plaintiff to come back to work after two (2) days.

39.     Additionally, Plaintiff required several days off to repair a hernia.  Due to this surgery, Plaintiff was entitled to a benefit under the FMLA.

40. This would have required Plaintiff to remain out of work between May 14, 2021 and May 18, 2021. Plaintiff was entitled to these days off under the FMLA.

41. Instead of providing him the requested FMLA leave, Defendant terminated Plaintiff.

**VIOLATON OF THE EQUAL PAY ACT  (29 U.S.C.S. § 206(d)(1))**

42. Plaintiff hereby incorporates paragraphs one (1) through twenty-six (26) as if fully set herein.

43. Defendant intentionally and willfully paid disparate wages to men and women for equal work as a store supervisor.

44. Plaintiff, who was employed as supervisor, and required equal skill, effort, and responsibility, and performed work under similar working conditions as women supervisors was paid different wages.

45. Particularly, Plaintiff was paid $15.00 per hour plus commission whereas a woman supervisor with less experience than Plaintiff, was paid $25.00 per hour plus commissions.

46. Defendant did not have a legitimate good faith reason for paying Plaintiff disparate wages than woman supervisors.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, CHRISTIAN ORTEGA, demands an award of:

a. Back Pay;

b. Front Pay;

c. Lost benefits;

d. Reinstatement;

e. Liquidated damages;

f. Prejudgment Interest;

g. Attorneys' Fees and Costs.

## JURY TRIAL DEMANDED

CHRISTIAN ORTEGA requests a jury trial on all questions of fact raised by this Complaint.

July 6, 2021                                          Respectfully submitted,

**SOLNICK LAW P.A.**
Attorney for Plaintiff
17501 Biscayne Boulevard, Suite 420
North Miami Beach, Florida 33160
Tel: 786-629-6530
Email: pete@solnicklaw.com

/s/ *Peter J. Solnick, Esq.*
By: _____
Peter J. Solnick, Esq.
Fla. Bar. 670006